```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  2/12/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY G.,

         Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

18-CV-9235 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

By motion dated October 23, 2024 (Dkt. 32), filed pursuant to 42 U.S.C. § 406(b), plaintiff Timothy G. seeks an order approving an award of $59,330 to his counsel, payable out of his past-due disability benefits, for the work that counsel performed in this action. For the reasons that follow, the motion will be granted in part, and the Social Security Administration (SSA) will be directed to approve a payment of $44,680 to plaintiff's counsel, out of his past-due benefits. Upon receipt of the award, counsel will be required to refund $6,319.74 to plaintiff, representing fees previously awarded pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

## Background

Plaintiff applied for disability benefits beginning November 5, 2011, but the SSA denied his application. Compl. (Dkt. 1) ¶ 5. Plaintiff requested a hearing before an administrative law judge (ALJ), but after two hearings, the ALJ again denied plaintiff's claim. *Id.* ¶ 6. On remand from the Appeals Council, plaintiff appeared and testified at yet another hearing, on January 5, 2018. *Id.* On August 3, 2018, the ALJ again denied plaintiff's claim. *Id.* Sixty-one days later, on October 3, 2018, that decision became the final determination of the agency. *Id.*[1]

---

[1] The ALJ's August 3, 2018 "Notice of Decision-Unfavorable" stated, in relevant part: "If you do not file written exceptions and the Appeals Council does not review my decision on its own, my decision will become final on the 61st day following the date of this notice. After my decision

On August 16, 2018, plaintiff retained Howard D. Olinsky of Olinsky Law Group (OLG) to represent him in this Court, *see* Olinsky Aff. (Dkt. 33) Ex. A (Dkt. 33-1) (Fee Agreement), and on October 9, 2018, through OLG, plaintiff timely filed this action. On March 28, 2019, the Commissioner of Social Security (Commissioner) filed the administrative record. (Dkt. 14.) On August 14, 2019, plaintiff filed a motion for judgment on the pleadings. (Dkt. 20.) On September 13, 2019, on the parties' stipulation, the Court remanded the case for further administrative proceedings. (Dkt. 23.) On January 23, 2020, also on stipulation, the Court approved an award of $6,736 in fees and expenses to plaintiff pursuant to EAJA.

After further agency proceedings, the SSA found plaintiff disabled, and on February 26, 2024 – more than four years after this Court remanded the case – the SSA issued a Notice of Award stating that plaintiff was entitled to past-due benefits in the amount of $370,574. *See* Olinsky Aff. ¶ 4; *id.* Ex. B (Not. of Award), at 3. The SSA advised that it was withholding $92,643.50 (25% of $370,574) "in case we need to pay your representative." Not. of Award at 3.

Under the Fee Agreement between plaintiff and OLG, if this Court remanded plaintiff's case to the SSA (which it did), and if, on remand, plaintiff secured an award of past-due benefits (which he has), OLG would be entitled to a fee up to 25% of the past-due benefits awarded by the SSA for representing plaintiff in federal court. Fee Ag. § 2. The agreement also noted that "if a federal court remands my case, the OLG may refer my case to Pasternack, Tilker, Ziegler, Walsh, Stanton, & Romano, LLC [Pasternack Tilker] for possible representation on remand." *Id.* § 3.

Although the SSA's Notice of Award was issued on February 26, 2024, Olinsky attests that it was "received by email" at his firm "on October 22, 2024," almost eight months later. Olinsky

---

becomes final, you will have 60 days to file a new civil action in Federal district court." Compl. Ex. A (Dkt. 1-1) at 2.

2

Aff. ¶ 4. In support of this assertion, counsel attaches a copy of an October 22, 2024 email from an administrative assistant at Pasternack Tilker, addressed to Olinsky and another OLG attorney, reading, "Attached please find the Notice of Award and OHO Correspondence requesting a Fee Petition." *Id*. Ex. B at ECF p. 2. There is no additional information in the record concerning the eight-month gap between the issuance of the Notice of Award and its receipt by OLG.

On October 24, 2024, plaintiff filed the instant motion, through OLG, requesting an award of $59,330 (approximately 16% of the past-due award of $370,574), as compensation for 29.3 hours of attorney time and 7.3 hours of paralegal time spent by Olinksy and others at OLG to represent plaintiff before this Court. Olinsky Aff. ¶¶ 7, 10; *see also id*. Exs. C-E (timesheets). Olinsky states that "[t]he hearing level representative intends to file a fee petition for work done at the agency level." *Id*. ¶ 6.

The Commissioner does not object to plaintiff's motion, but notes that "[a]warding the full amount requested by Plaintiff's counsel would result in reimbursement at an hourly rate of $2,000.00[.]" Comm'r Resp. (Dkt. 36) at 1.[2] Additionally, the Commissioner asks the Court to "direct that Plaintiff's counsel reimburse Plaintiff any fees he previously received under the EAJA." *Id*. at 2; *see also Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002) ("Fee awards may be made under both [section 406(b) and the EAJA], but the claimant's attorney must refund to the claimant the amount of the smaller fee . . . up to the point the claimant receives 100 percent of the past-due benefits.") (cleaned up).

---

[2] The Commissioner reaches this figure by deducting $730 for the paralegal time, at the presumed rate of $100 per hour, and dividing the remaining requested award ($58,600) by the 29.3 attorney hours spent by OLG attorneys on plaintiff's case in this Court. Comm'r Resp. at 1; *see also* Olinsky Aff. ¶ 10 (performing same calculation).

Plaintiff's counsel acknowledges his obligation to refund his EAJA award to his client upon receipt of his § 406(b) award. Olinsky Aff. ¶ 8.

## Legal Standard

The Social Security Act provides:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(i) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

42 U.S.C. § 406(b)(1)(A).

When considering a motion for attorney's fees pursuant to § 406(b), the court first determines whether it was timely made, *see Sinkler v. Berryhill*, 932 F.3d 83, 86-90 (2d Cir. 2019), and then reviews the request for reasonableness. *Id.* at 90-91.

The "applicable limitations period for filing § 406(b) motions" is the fourteen-day period set out in Fed. R. Civ. P. 54(d)(2)(B). *Sinkler*, 932 F.3d at 87-88. Thus, a § 406(b) fee motion must ordinarily be filed within fourteen days after the plaintiff receives the notice of award from the SSA. *Id.* at 87. The fourteen-day limitations period "is not absolute," and district courts are "empowered to enlarge th[e] filing period where circumstances warrant." *Id.* at 89. However, the burden lies with the plaintiff seeking an enlargement to provide "a factual basis to support a claim that it was 'reasonable' to delay the filing[.]" *Id.* at 90 (affirming denial of fee motion filed "more than six months after receiving notice of the Commissioner's calculation of benefits on remand," where plaintiff offered "no explanation" for the delay).

As to reasonableness, the Supreme Court has made it clear that § 406(b) "does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court." *Gisbrecht*, 535 U.S. at 791. Rather, § 406(b) "calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Id.* at 807. "Factors to be considered when determining whether an award is reasonable include: (a) whether the contingency fee is within the twenty-five percent limit; (b) whether the retainer was the result of fraud or overreaching by the attorney; and (c) whether the attorney would enjoy a windfall relative to the services provided." *Pelaez v. Berryhill*, 2017 WL 6389162, at *1 (S.D.N.Y. Dec. 14, 2017) (internal citations and quotation marks omitted), *adopted*, 2018 WL 318478 (S.D.N.Y. Jan. 3, 2018).

### Application

I first address the issue of timeliness. As noted above, the Notice of Award was issued on February 26, 2024, but plaintiff's fee motion was not filed until October 24, 2024, almost eight months later. Such a delay is not necessarily fatal, if counsel demonstrates that he was "not at fault for the delay." *Boylan v. Saul*, 2020 WL 5235755, at *2 (S.D.N.Y. Sept. 2, 2020) (approving § 406(b) application filed by OLG almost one year after date of Notice of Award, where Olinsky "was not the attorney of record before the Agency," "did not receive notice from the Agency when the Award was issued," "made routine inquiries of Plaintiff's representative before the Agency," and "filed the instant motion promptly after he received notice of the Award"); *see also*, *e.g.*, *Wioletta F. v. Comm'r of Soc. Sec.*, 2024 WL 1458489, at *2 (W.D.N.Y. Apr. 4, 2024) (finding that "excusable neglect" justified a ten-month delay between the issuance of the Notice of Award and the filing of the fee application where OLG did not receive the Notice until it requested a copy from plaintiff's hearing representative).

5

Conversely, in the absence of a reasonable explanation for the delay, courts do not hesitate to deny fee applications filed beyond the fourteen-day window prescribed by Rule 54(d)(2)(B). *See*, *e.g*., *Sinkler*, 932 F.3d at 90; *Maloney v. Saul*, 2020 WL 406371, at *2 (E.D.N.Y. Jan. 7, 2020) (recommending denial of fee application filed by OLG four months after receipt of Notice of Award, where counsel "failed . . . to provide any explanation or factual basis to justify the delay in filing the motion"), *adopted,* 2020 WL 405889 (E.D.N.Y. Jan. 24, 2020).

Here, as in *Wioletta F.*, counsel's factual showing should have been "more robust." 2024 WL 1458489, at *2. Attorney Olinsky attests that the February 26, 2024 Notice of Award was "received by email" on October 22, 2024 (Olinsky Aff. ¶ 4), and submits the incoming email, which came from Pasternack Tilker (a firm to which OLG refers clients for representation on remand). *Id*. Ex. B. From these facts, counsel implicitly asks the Court to infer that the notice was sent by the SSA to Pasternack Tilker – not to OLG – and that attorney Olinsky had no way of knowing about the award until such time as Pasternack Tilker chose to forward the document to OLG. See *Mcenery v. Comm'r of Soc. Sec.*, 2024 WL 4815849, at *3 (S.D.N.Y. Nov. 18, 2024) (approving § 406(b) application filed 82 days after date of Notice of Award, because "Hiller [plaintiff's counsel in the district court] did not receive Plaintiff's Notice of Award from the SSA because the SSA sent it to Nutting, the attorney who represented Plaintiff before the SSA on remand"). Counsel does not, however, state these facts plainly. Nor does he provide any evidence of diligence on his part. *Cf*. *Boylan*, 2020 WL 5235755, at *2 (granting delayed fee application where OLG "made routine inquiries" of plaintiff's hearing representative); *Wioletta F.*, 2024 WL 1458489, at *2 (W.D.N.Y. Apr. 4, 2024) (granting delayed fee application where OLG "requested a copy" of the Notice of Award from plaintiff's hearing representative).

6

As an exercise of discretion, the Court will accept plaintiff's minimal showing, construe the sparse facts provided in counsel's favor, and excuse the eight-month delay in filing the instant fee application. Counsel should not assume, however, that this Court will continue to do so in the event the firm once again files a late § 406(b) fee application without making a robust showing that it was "not at fault for the delay." *Boylan*, 2020 WL 5235755, at *2.

Turning to the merits, I find that many of the *Pelaez* factors – but not all – weigh in favor of plaintiff's application. The requested fee is within the 25% statutory limit. 42 U.S.C. § 406(b)(1)(A). There is no evidence in the record that the Fee Agreement was the result of fraud or overreach. Nor would the requested award constitute an undeserved bonus to lawyers who performed little or no valuable work on the case. OLG expended 29.3 hours of attorney time and 7.3 hours of paralegal time on this action. *See* Olinsky Aff. at ¶ 10; *id.* Exs. C, D, E. The attorney time was spent reviewing the lengthy administrative record and drafting and filing a 29-page memorandum of law in support of plaintiff's motion for judgment on the pleadings. Only after that filing did the Commissioner agree to remand the case for further administrative proceedings. In those proceedings, moreover, plaintiff secured the relief he sought (after two previous failures): a finding of disability and an award of past-due benefits. Olinsky Aff. ¶ 9. These factors all favor approval of the requested award. *See Marden v. Comm'r of Soc. Sec.*, 2024 WL 4499312, at *3 (S.D.N.Y. Oct. 16, 2024) (recommending approval of a similar contingency fee agreement for a plaintiff represented in this Court by OLG).

The only remaining question is whether the de facto hourly rate requested (driven primarily by the size of the past-due benefits award) is so high as to constitute a windfall to counsel, requiring reduction. Under *Gisbrecht*, a downward adjustment may be in order "[i]f the benefits are large in comparison to the amount of time counsel spent on the case," 535 U.S. at 808, as is the case here.

7

However, such "a reduction in the agreed-upon contingency amount should not be made lightly," *Blizzard v. Astrue*, 496 F. Supp. 2d 320, 325 (S.D.N.Y. 2007), because when a court finds that a high hourly rate justifies reducing the fee award, that reduction could "'serve to diminish the pool of attorneys willing to accept the risk of taking on' social security cases on a contingency fee basis in the future." *Marden*, 2024 WL 4499312, at *2 (quoting *Puerto v. Happy Life Home Health Agency Inc.*, 704 F. Supp. 3d 403, 406-07 (S.D.N.Y. 2023)).

Before reducing a § 406(b) fee award on "windfall" grounds, our Circuit requires that the court consider:

>  (i)   the "ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do";
> 
>  (ii)  "the nature and length of the professional relationship with the claimant – including any representation at the agency level";
> 
>  (iii) "the satisfaction of the disabled claimant"; and
> 
>  (iv)  "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result."

*Fields v. Kijakazi*, 24 F.4th 845, 854-55 (2d Cir. 2022).

Here, the requested award of $59,330 implies a blended hourly rate of $1,621 for all OLG timekeepers (including paralegals). If the 7.3 hours of paralegal time are first carved out at $100 per hour (as counsel suggests, *see* Olinsky Aff. ¶ 10), the remaining requested award of $58,600 implies an even higher hourly rate of $2,000 for the OLG attorneys who worked on this action. *Id*. This is an unusually high hourly rate in a social security case, particularly where, as here, the size of the past-due benefits award was due largely to passage of time both before and after the period during which OLG represented the plaintiff in this Court. On the facts of this case, therefore, I conclude that a downward adjustment is required.

As to the first *Fields* factor, "courts in this District have found that 'Olinsky is well experienced in handling social security cases,'" *Foley v. Kijakazi*, 2022 WL 17727642, at *3 (S.D.N.Y. Dec. 16, 2022) (quoting *Cutajar v. Comm'r of Soc. Sec.*, 2021 WL 1541386, at *3 (S.D.N.Y. Apr. 20, 2021)), and "have also recognized the impressive experience of Olinsky's firm more broadly." *Brockington v. Comm'r of Soc. Sec.*, 2024 WL 3639219, at *3 (S.D.N.Y. June 28, 2024), *adopted*, 2024 WL 3639192 (S.D.N.Y. Aug. 2, 2024) (approving an aggregate award of $15,000 for 15.7 hours of OLG work). In this case, OLG attorneys digested a 933-page administrative record and secured a stipulation remanding the matter to the SSA without the need for further motion practice. (*See* Dkts. 14, 23.) Consequently, the "ability and expertise of the lawyers" furnishes no basis for reducing the requested fee.

As to the third factor, the Court presumes, in the absence of any contrary evidence, that Timothy G. was satisfied with the quality of his representation by OLG, which resulted in a relatively speedy remand to the agency, where he (ultimately) obtained a fully favorable result.

As to the fourth factor, there is never any guarantee that a contingency case will be successful. "Lawyers who operate on contingency – even the very best ones – lose a significant number of their cases and receive no compensation when they do." *Fields*, 24 F.4th at 855; *see also Wells v. Sullivan*, 907 F.2d at 367, 371 (2d Cir. 1990) ("[P]ayment for an attorney in a social security case is inevitably uncertain, and any reasonable fee award must take account of that risk."). Here, OLG faced a particularly uncertain outcome, given that plaintiff had been denied benefits twice at the agency level.

It is the second factor ("the nature and length of the professional relationship with the claimant – including any representation at the agency level," *Fields*, 24 F.4th at 855) that makes it difficult to award OLG a fee amounting to $2,000 per hour. Unlike the attorneys in *Fields*, OLG

9

did not represent Timothy G. at the agency level, either before or after the civil action in this Court for which fees are now sought. Consequently, two sets of lawyers (both of whom are seeking fees, *see* Olinsky Aff. ¶ 6) were required to learn the record and press plaintiff's case, with a resulting loss of efficiency. *Cf. Fields*, 24 F.4th at 855 (upholding a generous award to the firm that "advocate[ed] on [plaintiff's] behalf during four separate hearings before ALJs and in multiple petitions to the Appeals Council," in part because "[i]t is quite likely that the significant investment of time and effort in Mr. Fields's case at the agency level further enabled [the firm] to operate with efficiency in the federal courts"). Here, as in *Gray v. Comm'r of Soc. Sec.*, "counsel did not have the type of attorney-client relationship built over multiple rounds of representation that distinguished counsel in *Fields* from other windfall cases. Thus, this factor justifies a downward adjustment." 2023 WL 3948796, at *3-4 (E.D.N.Y. June 12, 2023) (reducing § 406(b) award from the requested sum of $44,545.98, which implied "an effective hourly rate of $1,879.58," to $35,550, "which results in a *de facto* hourly rate of $1,500.00").

Additionally, as noted above, the size of Timothy G.'s past-due benefits award was largely an accident of timing: he was found disabled as of 2011 (seven years before OLG began representing him) but did not receive benefits until 2024 (five years after OLG ceased representing him). In similar cases, courts have not hesitated to reduce the award under § 406(b) to a more reasonable hourly rate. *See*, *e.g.*, *Susca v. O'Malley*, 2024 WL 3905663, at *3-5 (S.D.N.Y. Aug. 1, 2024) (reducing award from $57,219.73, which implied an hourly rate of $5,298.12, to $10,800, which equated to an hourly rate of $1,000, in part because plaintiff "was represented by Chermol & Fishman in the federal court action only" and her past-due benefits had already accrued for several years before the firm began its work), *adopted sub nom. Susca v. Comm'r of Soc. Sec.*, 2024 WL 3904797 (S.D.N.Y. Aug. 22, 2024); *Nashir v. Berryhill*, 2023 WL 2815003, at *2

(W.D.N.Y. Apr. 5, 2023) (reducing award to a de facto rate of $1,001 per hour where counsel represented plaintiff for "approximately half of the time that past due benefits were accruing").

Here, as in *Gray*, *Susca*, and *Nashir*, counsel's relatively abbreviated professional relationship with the plaintiff – which lasted only for the duration of this action – warrants a downward adjustment to the requested award, from $2,000 to $1,500 for each of the attorney hours spent on Timothy G.'s case in this Court. This produces a total award of $44,680 ($43,950 for 29.3 attorney hours plus $730 for 7.3 paralegal hours).

## **Conclusion**

For the reasons set forth above, plaintiff's motion (Dkt. 32) is hereby GRANTED IN PART. The Social Security Administration is directed to approve a payment of $44,680 to plaintiff's counsel, out of plaintiff's past-due benefits, and counsel is directed, upon payment of the § 406(b) award, to refund $6,319.74 to plaintiff.

Dated: New York, New York  
       February 12, 2025

**SO ORDERED.**

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**